UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:05-MC-201

| | |
|---|---|
| IN RE: SUBPOENA DUCES TECUM ) <br> SERVED ON DUKE ENERGY ) <br> CORPORATION in the matter of IN ) <br> RE: CALPINE CORPORATION ) <br> SECURITIES LITIGATION ) <br> ) | ORDER |

This matter is before the Court upon the Motion of Lead Plaintiff Policemen and Firemen Retirement System of the City of Detroit ("Lead Plaintiff") in the matter of *In re: Calpine Corporation Securities Litigation*, No. C 02-02316 SBA, N.D. Cal. (the "Lawsuit"), to Enforce Compliance with Subpoena Served on Duke Energy Corporation [file doc. 1], filed on May 9, 2005. Duke Energy Corporation ("Duke Energy") filed its Response to this Motion on June 7, 2005. Lead Plaintiff filed its Reply to Duke Energy's Response on June 27, 2005. Accordingly, this Motion is now ripe for the Court's consideration.

For the reasons set forth below, this Motion will be **granted** in part, and **denied** in part.

I. FACTUAL AND PROCEDURAL BACKGROUND

Lead Plaintiff has filed a securities class action lawsuit in the Northern District of California. (Pl.'s Mem. at 2.) The Lawsuit arose out of the "California Energy Crisis of 2000 and 2001" with regard to alleged material misstatements and omissions about the reasons for the increased wholesale energy prices in connection with Calpine Corporation's ("Calpine") issuance of senior notes. (Pl.'s Mem. at 2.) Duke Energy is not a party to the Lawsuit.

In the Lawsuit, Lead Plaintiff seeks recovery under section 11 of the Securities Act of 1933, for losses caused in connection with Calpine's issuance of an aggregate of two billion

dollars worth of 8.5% senior notes due on February 15, 2001. (Pl.'s Mem. at 2.) Lead Plaintiff alleges that Calpine made material misstatements and omissions about the reasons for the increased wholesale energy prices experienced during the California Energy Crisis. (Pl.'s Mem. at 2.) Lead Plaintiff specifically takes issue with Calpine's prospectus statements asserting that "the increases were due to external supply constraints when, in fact, several energy producers and marketers were manipulating prices by physically withholding supply from the market, and gaming the system through strategic bidding prices." (Pl.'s Mem. at 2.)

Duke Energy's subsidiaries are a few of the many companies that supplied power in California during the Energy Crisis. (Pl.'s Mem. at 2; Duke Energy's Mem. at 5.) Duke Energy and its affiliates and subsidiaries' involvement in the Energy Crisis has been the subject of investigation by the Federal Energy Regulatory Commission ("FERC") and the California Public Utilities Commission ("CPUC"). (Pl.'s Mem. at 2; Duke Energy's Mem. at 5-6.) Lead Plaintiff and Duke Energy disagree over the meaning of the conclusions of these investigations, but nonetheless, it cannot be denied that Duke Energy and its affiliates and subsidiaries had some involvement in California's Energy Crisis. (Sheils' Decl., Ex. 2, 3.) No matter how malevolent or benign that involvement may have been, the issue is whether Duke Energy possesses documents relevant to the Lawsuit.

Lead Plaintiff issued a subpoena duces tecum to Duke Energy on December 10, 2004, in connection with the Lawsuit. (Sheils' Decl. ¶ 7.) The original subpoena addresses a larger range of topics than the information currently requested by Lead Plaintiff. (Pl.'s Mem. at 4.) After the scope of discovery between Lead Plaintiff and Calpine was narrowed by Magistrate Judge Brazil in the Northern District of California, Lead Plaintiff likewise narrowed its requests of Duke

2

Energy. (Pl.'s Mem. at 4.) The requests are as follows:

1. All documents reflecting communications between you and Calpine and/or the Individual Defendants, or pertaining to Calpine concerning (i) bidding in the California energy market; (ii) the physical withholding of energy in the California energy market; and/or (iii) your power trading activities with Calpine in the California energy market, including, but not limited to, summaries of deals and/or trades between you and Calpine and audiotapes of trades between you and Calpine.

2. All documents pertaining to communications between you on the one hand, and WECC and/or IIR on the other, concerning physical withholding of energy in the California energy market, plant or generator outage information (for planned and unplanned outages), and submission of bids to the Cal ISO in order to exercise market power in the California energy market.

3. All documents pertaining to agreements or contracts, written or oral, between you and any other energy trader or power generator (including but not limited to Calpine) and/or the WECC and/or IIR, to share California power industry and market information as discussed in the previous request.

4. All documents concerning (I) physical withholding of energy in the California energy market and/or (ii) bidding in the California energy market including, but not limited to:

   a. All documents pertaining to your bids submitted to the California ISO Real Time market.

   b. All documents pertaining to the Real Time balancing market prices;

   c. All documents pertaining to your bids to the California ISO Day-Ahead market;

   d. All documents submitted by you to the California ISO or the WECC pertaining to a power generator's or power trader's costs for bids submitted in excess of the soft cap.

   e. All documents pertaining to calls to or from the California ISO for an Out of Market purchase;

   f. All tape recordings or transcripts or trades wherein you discuss the status of power plants or pricing strategies.

g. All documents pertaining to the practice of scheduling false load.

5. All documents pertaining to the marginal costs of each of Duke's power plants in the west and British Columbia.

6. All documents pertaining to the marginal costs of Calpine's power plants in the west and British Columbia.

7. All documents pertaining to [sic] or Duke declaring any units out of service.

8. All documents pertaining to outages at Duke's power plants.

9. All documents pertaining to Duke putting units on reserve shutdown.

10. All documents pertaining to Calpine declaring any units out of service.

11. All documents pertaining to outages at Calpine's power plants.

12. All documents pertaining to Calpine putting units on reserve shutdown.

13. All documents showing the location of Duke's power plants.

14. All documents that you made available or produced to any Congressional committee, the SEC, the United States Department of Justice, the NASD, the NYSE, the FERC, the CFTC, the CPUC or any other state, federal, foreign or private agency or entity conducting any formal or informal inquiry or investigation concerning (i) bidding in the California energy market and/or (ii) the physical withholding of energy in the California energy market.

15. All documents concerning communications between or among you and any Congressional committee, the SEC, the United States Department of Justice, the NASD, the NYSE, the FERC, the CFTC, the CPUC or any other state, federal, foreign or private agency or entity conducting any formal or informal inquiry concerning (i) bidding in the California energy market and/or (ii) the physical withholding of energy in the California energy market.

16. All documents concerning or reflecting any testimony or interviews given by you to any Congressional committee, the SEC, the United States Department of Justice, the NASD, the NYSE, the FERC, the CFTC, the CPUC or any other state, federal, foreign or private agency or entity conducting any formal or informal inquiry concerning (i) bidding in the California energy market and/or (ii) the physical withholding of energy in the California energy market.

17. All documents concerning your policies for the retention or destruction of documents, records, files or computer data.

18. All documents describing your organizational structure, your senior management personnel, board of directors and each committee or subcommittee thereof.

19. Electricity trade confirmations between Duke and Calpine.

20. Invoices of electricity transactions between Duke and Calpine.

(Sheils' Decl., Ex. 8.) Magistrate Judge Brazil's Order, discussed above, further limited any requests to documents that were generated during 2000 or 2001, and all subsequently generated documents that discuss or disclose relevant occurrences, thoughts, or communications that took place during those two years. (Pl.'s Mem. at 6, n.1.)

Duke Energy has raised seven issues which it contends prevent this Court from compelling it to respond to the above requests. Those issues are whether Duke Energy Corporation was the proper recipient of the subpoena; whether Lead Plaintiff may seek documents in the same categories as those which it has already sought from Calpine; that some of the requested documents are irrelevant to the claims in the underlying action; that the subpoena places an undue financial burden on Duke Energy; that Lead Plaintiff has not demonstrated a "substantial need" for highly confidential commercial information; that a finding that Duke Energy was not guilty of withholding power during the energy crisis means that none of its documents are relevant; and questioning the impact of an Order from another court requiring other power companies to produce documents similar to that which has been requested here.

## II. ANALYSIS

### A. Relevant Legal Principles

In general, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). As provided in Federal Rule of Civil Procedure 34(c), nonparties "may be compelled to produce documents and things or to submit to an inspection as provided in Rule 45." When a nonparty receives a subpoena to which it objects, it may "file a motion to quash or modify the subpoena pursuant to Fed. R. Civ. P. 45(c)(3)(A), seek a protective order pursuant to Fed. R. Civ. P. 26(c), or, as [Duke Energy] has done here, object to production of documents by opposing a motion to compel under Fed. R. Civ. P. 45(c)(2)(B)." *United States v. Star Scientific, Inc.*, 205 F. Supp. 2d 482, 484 (D. Md. 2002) (citations omitted). Rule 45(c)(2)(B) specifically provides that

> If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying command.

Fed. R. Civ. P. 45(c)(2)(B).

### B. Application

#### 1. Duke Energy is a Proper Recipient of the Subpoena

At the outset, the Court notes that Duke Energy has not cited a single legal authority to support its proposition that it cannot be compelled to produce the documents of its subsidiaries. (Duke Energy's Mem. at 4-6.) Nonetheless, Duke Energy asserts that it is not the proper recipient of this subpoena because it never participated in the California energy markets. (Duke

6

Energy's Mem. at 2.) Duke Energy asserts instead that the proper entities would be Duke Energy Trading and Marketing L.L.C. ("DETM"), and Duke Energy North America, LLC ("DENA") and its subsidiaries. (Duke Energy's Mem. at 4-5.) DETM is a joint venture between ExxonMobil Corporation and subsidiaries of Duke Energy. (Duke Energy's Mem. at 3.) Through its subsidiaries, Duke Energy owns about a sixty percent interest in DETM. (Duke Energy's Mem., Ex. 2.) DETM purchases and sells electricity in the California markets and among the sources for electricity that it sold were four limited liability companies which are remote subsidiaries of Duke Energy. (Duke Energy's Mem. at 3.) Duke asserts that DETM and the limited liability companies are "separate corporate entities whose separate existence has always been respected in practice." (Duke Energy's Mem. at 3.) Further, Duke asserts that the plant operating data requested is the property of another of its affiliates, DENA. (Duke Energy's Mem. at 4-5.) DENA is an "indirect, wholly-owned subsidiary" of Duke Energy. (Duke Energy's Mem., Ex. 2.)

In ruling on this issue, the Court must determine whether Duke Energy has the applicable documents in its "possession, custody or control." Fed. R. Civ. P. 34(a). Courts have routinely held that a "corporation must produce documents possessed by a subsidiary that the parent corporation owns or wholly controls." *United States v. Int'l Union of Petroleum and Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989) (citations omitted). Although most of the cases holding that a parent corporation must produce the documents of its wholly-owned subsidiaries deal with the subsidiary of a *party* corporation, the reasoning applies similarly to a non-party corporation and its subsidiaries as the determinative factor is the control the corporation has over its subsidiaries. *See, e.g., Uniden Am. Corp. v. Ericsson Inc.*, 181 F.R.D. 302, 305 (M.D.N.C.

1998).  Thus, there is no question that Duke Energy must produce the responsive documents held by DENA or any of its other wholly-owned subsidiaries.

The question of whether it must produce the documents held by DETM, of which it only owns a sixty percent interest (through its subsidiaries), will also be answered by the amount of control it possesses over DETM.  Looking first at the extensive knowledge that the Associate General Counsel for Duke Energy has of DETM operations and policies and the types of documents it has already produced in relation to investigations into the energy crisis, it would appear that Duke Energy has a substantial amount of control over DETM.  (Duke Energy's Mem., Ex. 4.)

There are indications of control throughout the documents and affidavits produced in this matter, (Duke Energy's Mem., Ex. 3, 11), but perhaps the most telling statement is in a letter sent to Duke Energy by Joseph Dunn, discussing Duke Energy's response to a subpoena from a committee of the California State Senate investigating the energy crisis.  (Duke Energy's Mem., Ex. 9.)  In this letter, Duke Energy is relieved from complying with the subpoena, however, the letter clearly states the following:

> You have indicated that you are producing documents attributable to entities that may not have been served subpoenas.  We appreciate your client's good faith in this respect.  You indicate that your client might be more comfortable with actual subpoenas with respect to each such entity.  The Committee is willing to provide the same, should you so request.  The relief otherwise described in this letter is conditioned on your willingness to accept service of process for each of them.

(Duke Energy's Mem., Ex. 9.)  Duke Energy has sufficient control over its subsidiaries to produce requested documents from those entities prior to the issuing of subpoenas to any of these

entities. And, Duke Energy has sufficient control to accept service on behalf of these entities. Although the letter does not mention DETM specifically, it must refer to DETM and DENA as Duke Energy has asserted that these are its only two affiliates involved in the energy market during that time period. (Duke Energy's Mem. at 4-5.) The Court is convinced that Duke Energy maintains the amount of control over its subsidiaries and affiliates to obtain possession of the documents necessary to comply with this Order. Accordingly, the Court rejects Duke Energy's argument that the wrong party was served with this subpoena.

> 2. **Lead Plaintiff is Entitled to Categories of Documents Which it also Sought from Calpine**

Duke Energy argues that Lead Plaintiff is not entitled to seek any documents from it that it should have requested from Calpine directly. (Duke Energy's Mem. at 7.) For this proposition, Duke Energy cites *Haworth, Inc. v. Herman Miller, Inc.*, 998 F2d 975, 978 (Fed. Cir. 1993). In *Haworth*, the Court affirmed the District Court's ruling requiring Herman Miller, Inc. "to seek discovery from its party opponent before burdening the nonparty." *Id.* This is a logical conclusion and this Court does not stray from this reasoning. However, this Court is not faced with the same situation. Here, Lead Plaintiff seeks to supplement the documents it has already received from Calpine. (Lead Pl.'s Mem. at 9.) Although Lead Plaintiff will not be allowed to go on a general fishing expedition of Duke Energy's files, it is entitled to documents which relate directly to its claim against Calpine. Pursuant to the limitations on the scope of the subpoena listed below in the conclusion of this Order, the Court rejects this argument.

> 3. **Many of the Requested Documents are Irrelevant to the Underlying Action**

Courts "may order discovery of any matter relevant to the subject matter involved in the

9

action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Lead Plaintiff argues that its requests

> go directly to the central claims in the litigation: the documents sought concerning physical withholding, bidding practices, plant outages and shutdowns, power pricing, and documents produced to investigative authorities are all reasonably calculated to lead to admissible evidence concerning manipulation by power companies and marketers (including Duke and Calpine) in the California energy market.

(Pl.'s Mem. at 6.) While Lead Plaintiff is correct that these documents are all relevant in the Lawsuit as to Calpine, this is not true as these requests are extended to also cover non-parties. The central issue in the Lawsuit is what Calpine knew at the time that it made the alleged misstatements. Accordingly, Duke Energy's operations during the energy crisis *generally* are not relevant to this action. Duke Energy's production in this action should be limited to its interactions with Calpine directly. Thus, Lead Plaintiff overstates what is relevant. It is simply not necessary for Duke Energy to respond to the broadly sweeping requests here that would be more properly directed at a party. As Duke Energy's counsel stated in a letter to counsel for Lead Plaintiff,

> The revised requests continue to seek information on Duke Energy's bidding and trading data and strategies (*e.g.*, requests 4, 14, 15, and 16), plant operations (*e.g.*, requests 7, 8, 9, and 13), and corporate structure (request 18), as well as alleged communications between Duke Energy and entities other than Calpine (*e.g.*, requests 2, 3, 4, 14, 15, and 16). I reiterate my request that you explain how such materials, which would not have been made available to Calpine, can be relevant to representations by Calpine.

(Sheils' Decl., Ex. 9.) Duke Energy will be directed to respond to only those requests which

involve its relations with Calpine during the relevant time period.

In addition to this limited discovery, Duke Energy will also be compelled respond to Requests 17 and 18. Request 17 seeks Duke Energy's basic policy of document retention. Although originally worded more broadly, Lead Plaintiff has stated through an incorporated memorandum that the only document sought is a simple statement of the policy. (Sheils' Decl., Ex. 10; Lead Pl.'s Reply at 4 n.2.) Thus, the Court will compel a response to Request 17, limited to a simple statement of the document retention policy of Duke Energy and each of its responding subsidiaries. Further, Request 18 seeks documents relating to the organizational structure of Duke Energy. Here, Plaintiff "seeks only to discover the basic information regarding corporate structure and the respective personnel" to assist Plaintiff in interpreting the documents it receives from Duke Energy. (Sheils' Decl., Ex. 10.) This is a reasonable request and a response will be compelled to the extent necessary for Lead Plaintiff to comprehend the produced documents. This requires Duke Energy to provide information on subjects such as organizational structure only where it would logically be required to understand a set of documents being produced under this Order.

### 4. Undue Financial Burden

Duke Energy argues that responding to Lead Plaintiff's subpoena would place an undue financial burden on a non-party. (Duke Energy's Mem. at 9-12.) This Court agrees, and as a result has significantly limited the scope of the subpoena. The Court will also limit this burden by requiring Lead Plaintiff to pay the *reasonable* cost of production of the relevant documents. This includes a reasonable fee for copying and attorneys' fees. Attorneys' fees will be strictly limited to time spent actually reviewing documents for production. The Court is mindful of the

fact that most documents will be reviewed by employees of Duke Energy and this time will not be reimbursed. However, any attorneys' fees which Duke Energy incurs because certain groups of documents must also be reviewed by an outside attorney shall be reimbursed by Lead Plaintiff.

### 5. Highly Confidential Commercial Information

In regards to disclosure of confidential information by a non-party, Federal Rule of Civil Procedure 45(c)(3)(B)(I) provides as follows:

> If a subpoena requires disclosure of a trade secret or other confidential research, development, or commercial information, [] the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

The Advisory Committee Notes make it clear that subparagraph (c)(3)(B) "identifies circumstances in which a subpoena should be quashed unless the party serving the subpoena shows a substantial need and the court can devise an appropriate accommodation to protect the interests of the witness." Fed. R. Civ. P. 45, Advisory Committee Notes, 1991 Amendment.

"[C]ourts with jurisdiction over ancillary or discovery matters should be cautious in determining what is relevant evidence to the main action, this is because of their unfamiliarity with the main action. Where there is doubt over relevance, the rule indicates that the court should be permissive." *Heat and Control, Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1024 (4th Cir. 1986). However, courts apply a balancing standard when ruling on such discovery issues, considering relevance, need, confidentiality, and harm. *See Insulate America v. Masco Corp.*, 227 F.R.D. 427, 432 (W.D.N.C. 2005).

Lead Plaintiff argues that it needs information on cost, pricing, bidding and transactional data to support expert testimony. (Pl.'s Mem. At 6.) This general request, which does not go to the specific issue of what Calpine knew or should have known, is not sufficient to show that Lead Plaintiff has a substantial need to receive this information from Duke Energy. Lead Plaintiff asserts no facts to show that Duke Energy would be its only source for this information and certainly has not proven that its need is greater than the potential harm which might come to non-party Duke Energy by sharing this sensitive information. Accordingly, this Court will not compel the production of documents responsive to the requests seeking general operating and financial information about Duke Energy and its subsidiaries and affiliates. However, as stated above, the Court will compel the production of documents that relate directly to Duke Energy's transactions and involvement with Calpine, more specifically any information pertaining to what Calpine actually knew, or what it should have known, through its dealings with Duke Energy and its subsidiaries and affiliates. The production of these documents could very well include sensitive and confidential information.

Noting that there is an existing Protective Order in the Lawsuit, (Sheils' Decl., Ex. 12), the Court assumes that execution of this Protective Order between the parties is enough to protect any outstanding interests of Duke Energy. However, should Duke Energy determine that there is such a need, it may petition this Court for a Protective Order specific to its production and provide a proposal for an Order which it concludes will protect its confidentiality concerns.

### 6. Duke Power's Guilt or Innocence in the California Energy Crisis is Irrelevant

The Court rejects Duke Energy's argument that a finding that it did not physically

13

withhold power during the energy crisis somehow relieves it of its duty to respond to this subpoena. The guilt or innocence of Duke Energy is not at issue in the Lawsuit. Rather, the issue is what Calpine knew, or should have known, and Duke Energy and its subsidiaries and affiliates are very likely to possess relevant information for that issue.

### 7. Relevance of Order Against Other Power Companies

The United States District Court for the Southern District of Texas recently enforced similar subpoenas served on two other non-party energy companies by Lead Plaintiff. (Pl.'s Mem. at 1.) While another court's findings are always instructive, this Court was not provided with enough background knowledge to establish that Duke Energy and the other two companies are similarly situated. Accordingly, this Court has conducted its own evaluation and reached its own conclusions regarding the subpoena specifically before it.

## III. CONCLUSION

**IT IS THEREFORE ORDERED** that Lead Plaintiff's Motion to Enforce Compliance with Subpoena Served on Duke Energy [file doc. 1] is **GRANTED** in part and **DENIED** in part. Duke Energy is compelled to respond to Requests 1, 3, 6, 10-12, and 17-20, as stated below, and shall not be required to respond to Requests 2, 4-5, 7-9, and 13-16. It is again noted that this Court's Order will follow Magistrate Judge Brazil's Order in limiting all requests to documents that were generated during 2000 or 2001, and all subsequently generated documents that discuss or disclose relevant occurrences, thoughts, or communications that took place during those two years. For clarity, all of the Requests which Duke Energy is compelled to respond to are listed below, some modified in accordance with the discussion of the law above:

1. All documents reflecting communications between you and Calpine and/or the

14

Individual Defendants, or pertaining to Calpine concerning (I) bidding in the California energy market; (ii) the physical withholding of energy in the California energy market; and/or (iii) your power trading activities with Calpine in the California energy market, including, but not limited to, summaries of deals and/or trades between you and Calpine and audiotapes of trades between you and Calpine.

3. All documents pertaining to agreements or contracts, written or oral, between you and Calpine, to share California power industry and market information as discussed in the previous request.

6. All documents pertaining to the marginal costs of Calpine's power plants in the west and British Columbia.

10. All documents pertaining to Calpine declaring any units out of service.

11. All documents pertaining to outages at Calpine's power plants.

12. All documents pertaining to Calpine putting units on reserve shutdown.

17. A statement of any policies of Duke Energy and its subsidiaries and/or affiliates (producing documents relevant to this Order), for the years from 2000 to the present, for the retention or destruction of documents, records, files or computer data.

18. A statement of the organizational structure, senior management personnel, board of directors and each committee or subcommittee thereof of Duke Energy and its subsidiaries and/or affiliates necessary for comprehension of those documents produced in response to this Order.

19. Electricity trade confirmations between Duke and Calpine.

20. Invoices of electricity transactions between Duke and Calpine.

**IT IS FURTHER ORDERED** that the cost of production of documents shall be calculated by Duke Energy and a reasonable bill shall be presented to Lead Plaintiff for payment and it is ordered that this bill shall be paid. If a dispute arises as to the amount of the cost of production, then either Duke Energy or Lead Plaintiff may file further motions.

**Signed: October 18, 2005**

Graham C. Mullen
Chief United States District Judge